UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

XIOMARA LEDESMA,

         Plaintiff,      17-CV-0740Sr

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

         Defendant.

---

## DECISION AND ORDER

    As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #13.

## BACKGROUND

    Plaintiff applied for disability insurance benefits and supplemental security income payments with the Social Security Administration ("SSA"), on February 11, 2013, alleging disability beginning June 17, 2008, due to chronic neck and back pain, depression, migraines and carpal tunnel surgery. Dkt. #7, p.105.

    On February 19, 2015, plaintiff, represented by counsel, appeared and testified with the assistance of a Spanish interpreter, along with an impartial vocational

expert, Esperanza Distefano, before Administrative Law Judge ("ALJ"), Sharon Seeley. Dkt. #7, pp.66-103. Plaintiff graduated high school in Cuba and has lived in the United states for approximately 20 years. Dkt. #7, pp.73-74. She was 49 at the time of the hearing. Dkt. #7, p.42. She speaks and reads Spanish and English. Dkt. #7, pp.75-77. Plaintiff was a licensed daycare provider between 2001 and 2011. Dkt. #7, pp.75 & 77. Following a motor vehicle accident on June 17, 2008, her husband and mother ran the daycare business. Dkt. #7, pp.77-79. She closed the daycare business after her husband assaulted another man with a knife. Dkt. #7, pp.91-92 & 491.

Plaintiff testified that she suffers from back pain since the accident, which limits the amount of time she can stand or walk or sit. Dkt. #7, pp.81-82. She resides on the second floor and has no difficulty using stairs. Dkt. #7, pp.81 & 88. She no longer cooks, cleans or does laundry. Dkt. #7, pp.90-91. Plaintiff drives approximately once a week. Dkt. #7, p.73. Plaintiff stopped seeing the back specialists when her no-fault benefits expired, but Dr. Glick continues to prescribe chiropractic treatment, heat therapy and ibuprofen. Dkt. #7, pp.83-84. Plaintiff testified that she did not like to be around a lot of people and suffered panic attacks. Dkt. #7, p.89.

When asked to assume, *inter alia*, that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours out of an 8 hour work day, alternating standing or walking five minutes every half hour; stand or walk for 6 hours out of an 8 hour work day, alternating five minutes of sitting every half hour; frequently stoop and crouch; occasionally kneel or crawl; frequently reach with bilateral

upper extremities; and was limited to simple instructions and tasks in a low stress environment with frequent incidental interaction with coworkers and the general public, the vocational expert opined that plaintiff could perform work as an assembler of small products, office helper and mail clerk, as well as sedentary unskilled positions such as order clerk, addresser and document preparer. Dkt. #7, pp.95-100.

Plaintiff's attorney stated that she was following up with Dr. Glick to obtain outstanding treatment records and the ALJ agreed to hold the record open for two weeks. Dkt. #7, pp.70 & 102-03. By letter dated March 19, 2015, the ALJ noted that she had not received the records and advised counsel that she would render her decision within ten days based upon on the current administrative record unless counsel submitted the evidence, requested additional time, or explained why she was unable to submit the evidence. Dkt. #7, p.320.

The ALJ rendered a determination that plaintiff was not disabled on March 17, 2016. Dkt. #7, pp.33-44. The Appeals Council denied plaintiff's request for review on June 12, 2017. Dkt. #7, p.6. Plaintiff commenced this action seeking review of the Commissioner's final decision on August 2, 2017. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d

145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria

of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff continued to run her daycare business until November of 2011, but had not engaged in substantial gainful activity for a subsequent 12-month period; (2) plaintiff's degenerative disc disease, depressive disorder and anxiety disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the capacity to perform less than a full range of light work, *to wit*, plaintiff was limited to frequent stooping or crouching, occasional kneeling or crawling, and frequent reaching with bilateral extremities, and was limited to simple instructions and tasks and frequent incidental interaction with coworkers and the general public throughout the day in a low-stress work environment; and (5) plaintiff retained the functional capacity to work in unskilled, light positions such as small product assembler, office helper and mail clerk, and was not, therefore, disabled within the meaning of the SSA. Dkt. #7, pp.35-44.

Plaintiff argues that the ALJ failed to develop the record by obtaining records from plaintiff's primary care provider. Dkt. #9-1, p.14. Plaintiff argues that the most recent medical records in the evidence were dated June 7, 2013, despite plaintiff's

testimony that she continued to see her primary care provider for back pain, anxiety and depression. Dkt. #9-1, p.15. As a result, plaintiff seeks remand. Dkt. #9-1, p.16.

The Commissioner responds that the ALJ granted the request by plaintiff's counsel to hold the record open for two weeks so that plaintiff could obtain the medical records from her primary care provider and subsequently informed plaintiff's counsel that a decision would be forthcoming on the existing record unless plaintiff's counsel submitted the medical records, requested additional time or otherwise explained the delay. Dkt. #11-1, p.20. The Commissioner argues that the ALJ's determination that plaintiff was not disabled is supported by substantial evidence. Dkt. #11-1, p.23. Specifically, the Commissioner argues that the ALJ adopted the more restrictive opinion of Dr. Ippolito, rather than that of Dr. Santarpia, with respect to plaintiff's mental RFC and appropriately gave substantial weight to Dr. Miller's opinion as to plaintiff's physical restrictions. Dkt. #11-1, p.26. The Commissioner argues that Dr. Miller's determination that plaintiff had a mild limitation for prolonged sitting, standing and walking and could not perform heavy lifting was consistent with the ALJ's determination that plaintiff could perform light work with some additional restrictions. Dkt. #11-1, p.26.

Social Security regulations place an affirmative obligation upon the ALJ to develop the administrative record. *Perez v. Chater* 77 F.3d 41, 47 (2d Cir. 1996); *See* 20 C.F.R. § 404.1512(b) ("Before we make a determination that you are not disabled, we will develop your complete medical history" and "make every reasonable effort to help you get medical evidence from your own medical sources and entities that

maintain your medical sources' evidence when you give us permission to request the reports."). This duty exists even when the claimant is represented by counsel. *Id.* However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999), *quoting Perez*, 77 F.3d at 48. As the ALJ was in possession of medical records from plaintiff's primary care provider for the period from February 22, 2008 through January 14, 2013 (Dkt. #7, pp.476 -550), and there was no suggestion at the hearing that plaintiff's condition had changed such that additional records from her primary care provider, if such records even existed, would alter the analysis of plaintiff's residual functional capacity to engage in substantial gainful activity, the Court finds that the ALJ did not err in basing her decision upon the medical records within the administrative record. *See Tatelman v. Colvin*, 296 F. Supp.3d 608, 612 (W.D.N.Y. 2017) ("The ALJ's duty to develop the record is not infinite, and when, as here, evidence in hand is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary.") (internal quotations omitted).

The ALJ's determination that plaintiff could engage in unskilled, light work with additional limitations is supported by substantial evidence. With respect to plaintiff's mental capacity, consulting examiner Dr. Santarpia determined on May 15, 2012 that plaintiff presented "as able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration,

maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress all within normal limits" with "[m]ild impairment . . . demonstrated in performing complex tasks independently," noting "[d]ifficulties caused by lack of motivation." Dkt. #7, p.455. Dr. Santarpia opined that "[t]he results of the present evaluation appear to be consistent with stress related problems, but in and of itself does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." Dkt. #7, p.455.

Treatment notes from plaintiff's primary care physician dated November 27, 2012 indicate that plaintiff had stopped her antidepressant medication and stopped counseling, prompting her primary care physician to provide a new prescription and referral for counseling. Dkt. #7, pp.509-10.

On January 10, 2013, plaintiff's primary care physician continued plaintiff's antidepressant medication upon plaintiff's report that her depressed mood persisted, but was improved. Dkt. #7, p.514. On June 7, 2013, Dr. Ippolito conducted a consultative psychiatric evaluation and diagnosed plaintiff with a severe major depressive disorder and an anxiety disorder. Dkt. #7, p.557. Dr. Ippolito opined that plaintiff

> presents as able to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, and perform complex tasks with supervision with no evidence of limitations. She can maintain attention and concentration, make appropriate decisions, and relate adequately with others with moderate limitations. She can appropriately deal

>with stress with marked limitations. These limitations are due
>to her current emotional distress.

Dkt. #7, p.557.

The ALJ's determination that plaintiff would be limited to a low-stress work environment with simple instructions and tasks and frequent incidental interaction with coworkers and the general public throughout the day is consistent with Dr. Ippolito's more restrictive assessment of plaintiff's capabilities. *See Coleman v. Commissioner*, 335 F. Supp.3d 389 (W.D.N.Y. 2018), *quoting Tatelman*, 296 F. Supp.3d at 613 ("it is well-settled that a limitation to unskilled work . . . sufficiently accounts for limitations relating to stress and production pace.").

With respect to physical limitations, a consultative physical examination by Dr. Miller on May 15, 2012 revealed normal gait, ability to walk on heels and toes without difficulty, ability to perform a full squat, full flexion, extension, lateral flexion bilaterally and full rotary movement bilaterally in the cervical spine; and 70 degree flexion, 10 degree extension, 25 degree bilateral flexion and 25 degree bilateral rotation of the lumbar spine. Dkt. #7, pp.458-59. Dr. Miller opined that plaintiff has mild limitations for heavy lifting, bending, reaching, pushing, pulling and carrying. Dkt. #7, p.460. On October 10, 2012, plaintiff's primary care physician noted no spinal tenderness and negative straight leg raise. Dkt. #7, p.507.

On December 12, 2012, plaintiff was examined by her primary care physician and prescribed Naproxen and Flexeril as needed for her complaints of neck

pain. Dkt. #7, p.512. She was referred to chiropractic care by her primary care physician on January 10, 2013. Dkt. #7, p.514.

A consultative physical examination by Dr. Balderman on June 7, 2013 revealed the following:

> Cervical spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally with mild pain. . . . Lumbar spine shows flexion 30 degrees. Effort is incomplete. SLR negative bilaterally. Full ROM of shoulders, elbow, forearms and wrists bilaterally. Full ROM of hips and ankles bilaterally. Knees flex to 70 degrees. The effort is incomplete.

Dkt. #7, p.561. Dr. Balderman observed that plaintiff

> appeared to be in no acute distress. Gait normal. The claimant makes no effort to walk on heels or toes. Squat is 20% of full. Stance normal. Used no assistive devices. Needed no help changing for exam or getting on and off exam table. Able to rise from chair without difficulty.

Dkt. #7, p.560. Dr. Balderman determined that plaintiff had "minimal physical limitations." Dkt. #7, p.562.

An MRI of the Lumbrosacral Spine conducted on August 28, 2013 revealed mild straightening of lumbar lordosis and spondylosis and disc herniations at L3-4, L4-5 and L5-S1. Dkt. #7, p.573. Noting that "[t]here is some disease with regard to her low back, but this does not explain the significant back pain she has," on December 18, 2013, UB Neurosurgery Nurse Practitioner, Laura Mason, ordered a CT of the lumbar spine and a bilateral lower extremity EMG for evaluation of the distribution of her pain and flexion extension films. Dkt. #7, p.641. The films revealed "mild disc

height reduction in the lower lumbar spine at L4-5 and L3-4" and "normal range of motion with flexion and extension," prompting an impression of "[m]ild mid and lower lumbar degenerative disc disease." Dkt. #7, p.643. A nerve conduction study conducted on January 14, 2014 was normal, with "no electrophysologic evidence of a right or left lumbrosacral radiculopathy, a large fiber polyneuropathy, or a left lower extremity mononeuropathy. Dkt. #7, p.630. Physical therapy was recommended. Dkt. #7, p.644.

The medical evidence supports the ALJ's determination that plaintiff could perform light work with additional restrictions relating to stooping, crouching, kneeling, crawling and reaching. Light work is defined in the regulations as the ability to frequently lift no more than 20 pounds or carry up to 10 pounds, with the ability to walk and stand or sit most of the time while pushing or pulling arm or leg controls. 20 C.F.R. § 404.1567 (b). Courts in this circuit have repeatedly determined that opinions of similar mild to moderate limitations support RFC findings that plaintiffs are capable of light work. *See Lewis v. Colvin*, 548 Fed. App'x 675, 678 (2d Cir. 2013) (medical assessment of mild limitations for prolonged sitting, standing and walking and determination that plaintiff should avoid heavy lifting and carrying was consistent with ALJ's determination that plaintiff could perform light work); *Gerry v. Berryhill*, 17-CV-7371, 2019 WL 955157, at *3 (E.D.N.Y. Feb. 26, 2019) (collecting cases); *Richardson v. Colvin*, 15-CV-6276, 2016 WL 3179902, at *8 (W.D.N.Y. June 8, 2016). Accordingly, the court finds that the ALJ's determination with respect to plaintiff's physical RFC is also supported by substantial evidence.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #9), is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #11), is granted.

**SO ORDERED.**

**DATED:** **Buffalo, New York**
**March 18, 2019**

_s/ H. Kenneth Schroeder, Jr._
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**